THE CONCERT HOUSE, INC., Respondent, *v.* JERRY BRANDT, Appellant and Third-Party Plaintiff-Appellant; PETER PAUL, Third-Party Defendant-Respondent.

First Department, March 23, 1971.

*Joel L. Hecker* of counsel (*Donald S. Engel* with him on the brief; *Booth, Lipton & Lipton,* attorneys), for appellant.

*Theodore Nussbaum* of counsel (*Mayer & Nussbaum,* attorneys), for respondent and third-party defendant-respondent.

NUNEZ, J. Plaintiff was the exclusive representative of a performing group known as Jay and the Americans under a written contract dated December 1, 1965. The third-party

defendant, Peter Paul, was one of plaintiff's two principals. Defendant until March, 1967 was employed by the William Morris Agency which handled bookings for Jay and the Americans. Upon defendant's resignation from the William Morris Agency, one of the members of Jay and the Americans asked defendant to become involved with the group which was then unhappy with plaintiff. According to appellant's version, he informally met with Jay and the Americans but advised them that he would not represent them unless they were released by plaintiff. The group thereupon suggested a working arrangement between defendant and Paul, the third-party defendant. Several meetings were held between those individuals. Paul admitted that Jay and the Americans were dissatisfied and wanted appellant to become involved. Paul sought an arrangement to that end. Appellant detailed in his affidavit below the various negotiations and the fact that they ultimately failed. Appellant then admitted that he became associated with Jay and the Americans but only *after* they informed him that they no longer had a contract with plaintiff. He became the group's manager pursuant to an agreement in May, 1967.

Summary judgment should not have been granted. Appellant's liability for the tort of intentionally interfering with plaintiff's contract has not been established as a matter of law. The facts are sharply in dispute. According to appellant's version, prior to March 20, 1967, he was brought together with Paul at the urging of Jay and the Americans and with Paul's encouragement and co-operation. He entered into an arrangement with Jay and the Americans only upon being informed that they were no longer contractually bound to the plaintiff. Whether or not appellant's belief of that assertion was justified or is "feigned naivete" (as found by Special Term) cannot be determined on this record. The proof establishes that there was a termination of the contractual relationship between plaintiff and Jay and the Americans in March, 1967 resulting in an arbitration award of damages to plaintiff against Jay and the Americans. "In order to be held liable for interference with a contract, the defendant must be shown to have caused the interference. It is not enough that he merely has reaped the advantages of the broken contract after the contracting party has withdrawn from it of his own motion. Thus acceptance of an offered bargain is not in itself inducement of the breach of a prior inconsistent contract, and it is not enough that the defendant has done no more than enter into one with knowledge of the other, although he may be liable if he has

taken an active part in holding forth an incentive, such as the offer of a better price or better terms.'' (Prosser, Torts [3d ed.], 958; Footnotes omitted.)

It cannot be determined on this record as a matter of law that appellant intentionally interfered with plaintiff's contractual relationship. It is equally consistent that the group was solely responsible for the termination of their agreement and for appellant's negotiations with Paul and the managerial contract with appellant in May, 1967. According to appellant's version, he was an innocent beneficiary of the benefits which plaintiff previously enjoyed but which Jay and the Americans, albeit wrongfully, took away from the plaintiff when they breached their contract. Paul's actions and their cause and effect are also in sharp dispute. These issues cannot be resolved on affidavits. They constitute genuine factual disputes which can only be resolved upon trial.

The order Supreme Court, New York County (STREIT, J.) entered October 7, 1970 granting summary judgment to plaintiff and third-party defendant and denying defendant-third-party plaintiff's cross motion for summary judgment should be modified on the law to the extent of reversing the grant of summary judgment to plaintiff and third-party defendant and, as thus modified, the order should be affirmed with costs and disbursements to defendant-appellant.

McGIVERN, J. P., MARKEWICH, KUPFERMAN and TILZER, JJ., concur.

Order, Supreme Court, New York County, entered on October 7, 1970, unanimously modified, on the law, to the extent of reversing the grant of summary judgment to plaintiff and third-party defendant and, as thus modified, the order is affirmed; and appellant shall recover of respondents $50 costs and disbursements of this appeal.